74240, 74241. E. D. LACEY MILLS, INC. v. KEITH et al.;
and vice versa.
(359 SE2d 148)

POPE, Judge.

E. D. Lacey Mills, Inc., d/b/a Lacey Rug Mills ("Lacey"), is a manufacturer of bathroom rugs. In July of 1981, Lacey's president and, at that time, sole owner, commenced negotiations with defendant Shakley for employment with Lacey. Shakley accepted a position as Lacey's vice-president in charge of sales. During negotiations Shakley convinced Lacey's president also to hire defendant Keith, who was at that time employed as vice-president in charge of manufacturing by a competing rug manufacturer. Shakley and Keith had previously worked together as a team for the competing manufacturer before Shakley was dismissed. According to the testimony of Shakley and Keith, it was their lifelong goal to own a rug mill. They believed the arrangement with Lacey offered them that opportunity.

All parties agree that the defendants' employment contracts were oral and terminable at will. For purposes of its motion for summary judgment brought before the trial court, Lacey admits the terms of the agreements were as follows: Shakley was to receive as his compensation a commission of two percent of Lacey's annual sales with $96,000 as a draw against commissions; Keith was to receive a beginning salary of $50,000 to be raised to $70,000 within one year of his employment or when the company became profitable, if sooner; both Keith and Shakley were to receive five percent of plaintiff's stock as a gift; both Keith and Shakley were offered an option to purchase an additional nineteen percent of Lacey's stock for $200,000 and a final eleven percent, the controlling shares, for $100,000, with financing for the sale to be provided by Lacey's factoring agent; and both Keith and Shakley would be paid three and one-third percent of Lacey's annual pre-tax profits as an annual performance bonus. Lacey further admits its president, in order to induce Keith to leave his previous position immediately, promised Keith he would receive the balance of any bonus or other sums owed to him by his previous employer if not paid in full because of his leaving prior to the date the bonus was to be paid.

Lacey admits defendants performed well and in the years 1983 and 1984 Lacey showed its greatest net profits in over ten years. In July 1984 Lacey's president presented both Keith and Shakley with five percent of the stock, as promised in the employment agreement. He also presented them with a written stock option agreement for the

sale of the additional shares of stock. While the proposed stock option agreement offered the first nineteen percent of stock at the $200,000 price agreed upon, it did not provide any means for financing the sale. The proposed written agreement outlined a formula for calculating the price of the final eleven percent of stock which greatly exceeded the original agreement to sell that stock for $100,000. When the parties could not agree to the terms of the stock options, Keith and Shakley began exploring other alternatives for fulfilling their goal of owning a rug mill. While still employed by Lacey, both Keith and Shakley made numerous contacts with, among others, the trustee in bankruptcy for the facilities owned by their now defunct previous employer. They retained an attorney to draft articles of incorporation for a new company and paid earnest money to the trustee in bankruptcy for an option to purchase the facilities of the bankrupt mill. When Lacey's president learned of these activities, Keith was fired and shortly thereafter defendant Shakley resigned. Keith and Shakley immediately went into business in direct competition with Lacey, hiring eighteen of Lacey's 200 employees and retaining seventeen of Lacey's twenty-one sales representatives.

In a multi-count complaint, as amended, Lacey sued Keith and Shakley for damages for the lost value of their services for that time spent working for the interest of their new company; breach of their fiduciary duties in contacting Lacey's employees and sales representatives; tortious interference with contract for inducing employees to leave Lacey's employ; violation of the Uniform Deceptive Trade Practices Act, OCGA § 10-1-372 (a) (8), for allegedly making disparaging remarks in the course of soliciting employees; and a claim for unfair competition in violation of the Lanham Act, 15 USC § 1126 (h) (1). Keith and Shakley counterclaimed for breach of their respective employment contracts. The trial court granted in part and denied in part both Lacey's motion for partial summary judgment on the counterclaim and defendants' motion for summary judgment on Lacey's complaint. Lacey filed an appeal (no. 74240) and Keith and Shakley filed a cross-appeal (no. 74241), which have been consolidated for consideration.

1. Lacey's first three enumerations of error take exception to the trial court's grant of summary judgment to Keith and Shakley (hereinafter "defendants") as to Count 8 of the amended complaint, which alleges violation of the Lanham Act. We disagree with the trial court's finding that Lacey's pleadings have been pierced as to this allegation and therefore reverse the grant of summary judgment as to Count 8.

Judging from the testimony of its president, Lacey claims it can show defendants engaged in unfair competition in violation of the Lanham Act by using confusingly similar labels and style numbering system, taking Lacey's price list and copying Lacey's product styles.

The mere copying of Lacey's rug styles would not give rise to a cause of action under the Lanham Act since "there exists a fundamental right to compete through imitation. . . ." *In re Morton-Norwich Prods.*, 671 F2d 1332, 1336 (C.C.P.A. 1982). However, a claim for violation of the Lanham Act is stated where a plaintiff alleges its competitor copied its styles, coloring and sales packaging so as to create confusion among potential customers as to the origin of the goods. *Federal-Mogul-Bower Bearings v. Azoff*, 313 F2d 405 (6th Cir. 1963); *Dave Grossman Designs v. Bortin*, 347 FSupp. 1150 (IV) (N.D. Ill. 1972). In the *Bortin* case, the defendant moving for summary judgment submitted into evidence copies of the product and packaging used by each party, yet the court found insufficient evidence to make a ruling on whether the defendant's trade dress was likely to create confusion or misunderstanding and, therefore, denied the motion for summary judgment. In the case sub judice, defendants based their motion for summary judgment on a simple denial of the plaintiff's allegations. The record is void of any evidence whatsoever concerning the labels for the rugs in question or the issue of customer confusion; therefore, no finding on this issue could properly be made. Since this is a motion for summary judgment, the burden is upon the movant to refute the plaintiff's allegations; plaintiff is not required to present evidence to support the allegations but may resist a motion for summary judgment by doing nothing, relying on the failure of the movant to remove all issues of fact from the case. Cf. *Benefield v. Malone*, 110 Ga. App. 607 (139 SE2d 500) (1964). Defendants presented no evidence which would pierce Lacey's allegations; therefore, summary judgment as to Count 8 was improper.

2. Lacey maintains the trial court erred in denying its motion for summary judgment on defendant Shakley's counterclaim for commissions allegedly earned. The parties agree Shakley's oral employment contract was terminable at will. For purposes of its motion for partial summary judgment, Lacey admits that under the terms of the employment agreement Shakley was to be compensated by a two percent commission. Nevertheless, Lacey argues the compensation agreement is unenforceable as an executory promise. It is true an employee cannot sue to enforce future performance of a terminable-at-will employment agreement. However, an employee may sue on an oral contract for employment terminable at will "for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge, and not for damages or for compensation for services not performed or for any breach of contract." *Brazzeal v. Commercial Cas. Ins. Co.*, 51 Ga. App. 471 (180 SE 853) (1935). The authority relied upon by Lacey is inapplicable to the issue of compensation actually earned by an employee for past performance under the terms of a terminable-at-will agreement. "[W]hen the employee has

actually performed services [under a contract terminable at will] he may recover of the employer the compensation due him for the services rendered." *Spindel v. Nat. Homes Corp.*, 110 Ga. App. 12, 15 (137 SE2d 724) (1964). Where an employee has been discharged under a terminable-at-will employment contract, he may bring an action to recover the commissions due him in accordance with the employment agreement. *Brazzeal*, supra. The trial court properly denied Lacey's motion for summary judgment on defendant Shakley's counterclaim for commissions allegedly earned.

3. On the other hand, we agree the trial court erred in denying Lacey's motion for summary judgment on defendant Keith's counterclaim to recover the $25,000 year-end bonus which he allegedly earned from his previous employer but lost when he resigned prior to the end of the year. We reject Lacey's argument that the promise to pay Keith the balance of any sums owed to him by the previous employer was an agreement to pay the debt of another and thereby unenforceable under the terms of the Statute of Frauds. Lacey's promise was an original undertaking and thereby not subject to the Statute of Frauds since Lacey made the promise for its own economic advantage rather than for the benefit of the original debtor. See *Thomason v. Pease Co.*, 47 Ga. App. 776 (171 SE 467) (1933); Restatement 2nd of Contracts, § 116 (1981). Nevertheless, the promise to pay the bonus forfeited by Keith's early departure is, in itself, a promise to pay a bonus. While a promise to pay wages of a sum certain is enforceable after performance by the employee, a promise to change the terms of compensation in the future is not enforceable. A promise to pay a bonus or to increase wages in the future is clearly an executory obligation. "It is the general rule that a hiring indefinite as to time is terminable at the will of either party and creates no executory obligations." *Lowe v. Royal Crown Cola Co.*, 132 Ga. App. 37, 40-41 (207 SE2d 620) (1974). The lower court erred in denying Lacey's motion for summary judgment in regard to the promise to pay a bonus since a terminable-at-will employment contract creates no executory obligations.

4. Defendants' Cross-Appeal, No. 74241. Defendants contend the trial court erred by resolving certain disputed factual issues which are for resolution by the jury. Defendants maintain the trial court made findings of fact which transformed the summary judgment adjudication into a bench trial and therefore claim the entire order should be vacated. We find the trial court made no improper findings of fact but merely erred in defendants' favor in determining no issue of fact existed in regard to Count 8 of Lacey's complaint, which we reverse in Division 1 of this opinion. We find defendants' first enumeration of error has no merit.

5. We uphold the trial court's grant of summary judgment to Lacey on defendants' counterclaim for unpaid year-end bonuses. For

purposes of its motion for summary judgment, Lacey admits it agreed during employment negotiations in 1981 to pay defendants an annual pre-tax performance bonus of a certain percentage of profits beginning in 1982. Lacey admits this promise was made as part of the initial compensation offer to induce defendants to accept employment. Therefore, this promise is distinguishable from an unenforceable promise to change the terms of compensation in the future, as described in Division 3 of this opinion. Normally, "[s]uch a promise, made at the beginning of the employment, is enforceable, though it would not be if made pending the term or after performance was complete." *Phillips & Co. v. Hudson*, 9 Ga. App. 779, 781 (72 SE 178) (1911). However, here the promise of a yearly bonus was not to be performed within one year from the date it was made in September in 1981. Therefore, this portion of the employment agreement was within the Statute of Frauds and is unenforceable.

6. We uphold the trial court's grant of summary judgment to Lacey on defendant Keith's counterclaim for recovery for a promised salary increase. As discussed in Division 3, a promise to raise wages in the future is merely an executory obligation which is unenforceable as part of a terminable-at-will contract. "Any attempt by the [employee] to base a recovery on oral promises that his pay would be increased in the future must also fail, as the underlying employment contract was terminable at will." *Walker v. Gen. Motors Corp.*, 152 Ga. App. 526, 527 (263 SE2d 266) (1979).

Defendant Keith contends the promise to increase salary is no longer executory since he performed under the contract and argues an employee may maintain an action to recover damages for breach of an oral contract of employment when the employee has performed the requested services. The cases cited by defendant are distinguishable since they involve enforcement of the original agreement for compensation and not a promise for a future increase in compensation. See *Hirsch's v. Adams*, 117 Ga. App. 847 (162 SE2d 243) (1968); *Rhine v. Sanders*, 100 Ga. App. 68 (110 SE2d 128) (1959). *Hans Godo Frabel v. Brennan's of Atlanta*, 151 Ga. App. 379 (259 SE2d 649) (1979), is inapplicable since, in the case sub judice, there was no change in the terms or conditions of the contract, but merely an unenforceable promise of future performance. In a terminable-at-will employment contract the original terms for compensation are enforceable for that work actually performed under the contract. However, a promise of future change in compensation is unenforceable since neither party is bound to continue performance under the contract at all.

For the first time on appeal, defendant Keith claims he is entitled to recover the promised wage increase on the theory of promissory estoppel. We need not address this argument because "such ground for recovery was not set out in [Keith's counterclaim] and was

not made a part of the trial judge's ruling. 'This court reviews rulings, and a failure to rule when there was no request therefor will not be reviewed by this court.' *Nash v. Crowe*, 222 Ga. 173 (149 SE2d 88) [(1966)]." *Lowe*, supra at 40.

7. We affirm the grant of summary judgment to Lacey on defendants' counterclaim for breach of the stock purchase agreement. Lacey admits it orally promised to sell the defendants stock at a given price "once plaintiff became profitable." Defendant Keith testified it was his understanding the stock option could be exercised "if we could turn the company around" so the company's creditor had a "performing loan." It was his understanding the option could be exercised "after . . . we [paid] down the [creditor's] debts." We find these terms create a condition precedent which is so vague and indefinite the contract is unenforceable. In *Dale's Shoe Store v. Dale*, 104 Ga. App. 371 (121 SE2d 695) (1961), this court found a corporation's promise to pay its employee for services rendered "when the store got on its feet and got to making a profit" was too vague and uncertain to be enforceable. "In the absence of any evidence on the question of what the condition means or what the intention of the parties was we can see no basis upon which to place a reasonable, commonsense conclusion . . . . The indefinite and uncertain condition nullified the whole contract. . . ." Id. at 372. The record before us shows at the time defendants came to work for Lacey, and throughout the tenure of their employment, plaintiff Lacey remained highly leveraged to its creditor. While defendants were employed by Lacey, Lacey borrowed additional funds to expand its operations. As a result, even though Lacey made record profits in 1983 and 1984 and performed under its loan obligations, its long-term debt was reduced only marginally. Moreover, during the first half of 1985, while defendants were still employed by Lacey, Lacey's gross profits declined sufficiently to prompt the creditor to request an explanation from Lacey for the decline in profitability. Therefore, even though Lacey came to show a profit, it is questionable and uncertain whether it was "profitable" as anticipated in the parties' agreement for the sale of stock. We find the stock purchase agreement is unenforceable because of the uncertainty of its terms.

8. We affirm the grant of summary judgment to Lacey on defendant Keith's counterclaim for breach of Lacey's agreement to pay the balance of stock option funds allegedly owed him by his previous employer for reasons set forth in Division 3.

9. We affirm the trial court's denial of defendants' motion for summary judgment on Counts 1 and 2 of Lacey's complaint, alleging breach of fiduciary duty. We agree an employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed. "Even before the termination of

his agency, he is entitled to make arrangements to compete. . . . Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete." Restatement 2nd of Agency, § 393 (1958). Nevertheless, the record contains sufficient evidence to raise a jury question as to whether defendants fulfilled their duties to Lacey as full-time paid employees during the months they made plans for their new company. Defendants admittedly conducted numerous meetings and telephone calls in pursuit of their plans. Testimony from one of Lacey's secretaries established defendant Keith was frequently absent from the office from January 1985 through the date of his departure. The record also shows the defendants broached the subject of their plans to go into business in competition with Lacey to certain of Lacey's sales representatives in the months prior to their departure. Even though an employee may make plans to compete with his employer while still employed, "[h]e is not, however, entitled to solicit customers for [a] rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business." Restatement 2nd of Agency. Id. The record contains sufficient evidence to create a question for the jury as to whether defendants breached their fiduciary duties to Lacey.

10. We affirm the trial court's denial of defendants' motion for summary judgment on Count 4 of Lacey's complaint, alleging tortious interference with Lacey's contracts with its employees and sales representatives. Defendants are correct in arguing the law grants a former employee a privilege to compete with his former employer for customers and employees. An individual is not liable for interference with contractual relations for the hiring away of a competitor's terminable-at-will employee if "(a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other." Restatement (2nd) of Torts § 768 (1965). On the other hand, "[t]he fact that an employment is at the will of the employer and employee does not make it one at the will of others, and a malicious and wrongful interference with such employment by another is actionable although the employment be at will." Ott v. Gandy, 66 Ga. App. 684 (1) (19 SE2d 180) (1942). We find an issue of fact remains for the jury as to whether defendants employed wrongful means to solicit Lacey's employees and sales representatives.

The record shows the defendants hired 17 of Lacey's 21 sales representatives and 18 of Lacey's employees. While these employees were not executives, they were supervisors and hourly wage earners in the dye operation, a particularly crucial step in Lacey's manufacturing

process. Immediately after leaving Lacey and forming their own company, defendants issued a telegram announcing the formation of a new company. The telegram was sent to all Lacey's sales representatives but was not sent to any other sales representatives affiliated with other competitors. Defendant Shakley admits he told certain sales representatives he believed a sufficient amount of Lacey's business would be lost to the new company and as a result Lacey might find it difficult to repay its loans. Shakley also admits quoting to at least one sales representative a statement contained on Lacey's confidential financial statement that if Lacey's creditor were to call its loans, Lacey would not survive. The record supports Lacey's allegation it suffered a competitive disadvantage in losing its sales representatives and its employees. Whether these facts show defendants acted wrongfully or "maliciously" so as to entitle plaintiff to an award for tortious interference is a question for the jury. See *Nager v. Lad'n Dad Slacks,* 148 Ga. App. 401 (3) (251 SE2d 330) (1978); *Architectural Mfg. Co. v. Airotec, Inc.,* 119 Ga. App. 245 (166 SE2d 744) (1969). "[W]hile even the destruction of a competing business by means of attracting its customers in the fair course of trade is not actionable, destruction or substantial injury by means of attracting away all or a large percentage of personnel upon whom it must depend to function, especially if other circumstances such as the use of confidential information or misrepresentations as to the plaintiff's financial solvency are involved, is compensable, with lack of actual malice going merely to mitigation of damages." Id. at 251.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JUNE 4, 1987 —
REHEARING DENIED JUNE 18, 1987.

*Charles T. Lester, Jr., R. Michael Robinson, T. Joseph Campbell, L. Hugh Kemp,* for appellant.

*Bruce C. Smith, Joseph R. Manning, Sam F. Little,* for appellees.