A94A0113. IKEMIYA v. SHIBAMOTO AMERICA, INC. et al.
(444 SE2d 351)

COOPER, Judge.

Plaintiff Kyoichi Ikemiya appeals from the trial court's grant of summary judgment to defendants Shibamoto America, Inc. ("SAI") and SAS Foods, Inc. ("SAS") on plaintiff's complaint alleging claims for wrongful termination of an employment agreement and fraud.

The record reveals that plaintiff was the owner of Tokyo Trading Company, Inc. which had been doing business as KSK Foods, Inc. ("KSK") since 1980. In 1987, KSK was bought by a company named Maruki USA, and plaintiff remained employed by KSK as general manager. By 1987, plaintiff was also the owner of a sake and plum wine distributorship and a Japanese grocery store in Atlanta called Satsumaya.

In the spring of 1988, Maruki USA began having financial troubles, and plaintiff began looking for investors to help KSK. Plaintiff made several trips to Japan and met with representatives of SAI and their parent company Shibamoto, Inc. to discuss the possibility of de-

---

fendants taking over KSK. After several alternatives were discussed, SAI ultimately decided it would purchase the inventory and some equipment from KSK. A new corporation, SAS, was formed to buy KSK's assets and operate the new business with SAI as its sole shareholder. During negotiations, it was also agreed that SAS would hire plaintiff as sales manager for the new company and pay him an annual salary of $60,000. The parties also agreed that plaintiff would not start to work for SAS until he finished winding up KSK's business, although plaintiff could and did tell KSK's old customers to place all new orders with SAS. There were no discussions regarding any other terms of plaintiff's employment. A short memorandum was prepared in August 1988, after one of the meetings in Tokyo, summarizing the terms of defendants' purchase of the assets of KSK. Although this memorandum indicates plaintiff was to work for SAS, it does not mention his salary, the length of his employment or the basis by which he could be terminated.

Shortly after the sale of KSK's assets to SAS, defendants wrote plaintiff a letter informing him that his ownership of Satsumaya and the liquor distributorship was against company policy because the businesses were similar and could create a conflict with SAS's business interests. After receiving this letter, plaintiff told defendants he would not work for SAS. Plaintiff then filed this action against defendants for wrongful termination of an employment contract and fraud. Defendants moved for summary judgment, and the trial court granted their motion on the grounds that no enforceable contract existed and there were no facts to support plaintiff's conclusory allegations of fraud.

1. Plaintiff contends the trial court erred by ruling that plaintiff's employment agreement with defendants was unenforceable because the agreement was not in writing as required by the statute of frauds. Plaintiff does not argue that the memorandum signed in August 1988 constituted an enforceable employment agreement between the parties. Rather, plaintiff contends any agreement plaintiff had with the defendants did not have to comply with the statute of frauds because there has been "such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance." OCGA § 13-5-31 (3).

Agreements not to be performed within one year from their making must be in writing. OCGA § 13-5-30 (5). Although defendants' oral offer of employment to plaintiff was made in August 1988, his employment with SAS was not to begin until some unspecified time in the future after he had finished winding up the business of KSK. This kind of employment agreement has been repeatedly held to be "one that is not to be performed within one year from the making thereof and one that falls within the Statute of Frauds. [OCGA § 13-

5-30 (5).] Such a contract is unenforceable." (Citations and punctuation omitted.) *Slater v. Jackson*, 163 Ga. App. 342, 343 (2) (294 SE2d 557) (1982). See also *Gatins v. NCR Corp.*, 180 Ga. App. 595, 598 (349 SE2d 818) (1986).

Part performance required by OCGA § 13-5-31 (3) to obviate the statute of frauds must be substantial and essential to the contract. *Hudson v. Venture Indus.*, 243 Ga. 116, 118 (252 SE2d 606) (1979). Thus, "oral employment contracts for longer than one year are unenforceable unless there has been part performance that is 'consistent with the presence of a contract and inconsistent with the lack of a contract.' [Cit.]" *Baxley Veneer &c. v. Maddox*, 261 Ga. 309 (1) (404 SE2d 554) (1991). Plaintiff's activities — traveling to Japan, facilitating the sale of KSK to SAS, finding office space for the new company, referring customers to SAS, and providing SAS with KSK's client list — were not sufficient acts to establish part performance and remove this agreement from the statute of frauds because these activities are not inconsistent with employment terminable at will without a contract. *Presto v. Scientific-Atlanta*, 193 Ga. App. 606 (4) (388 SE2d 719) (1989); *Gatins v. NCR Corp.*, supra at 598; see also *Hudson v. Venture Indus.*, supra at 119. Therefore, the trial court did not err in ruling the employment agreement to be unenforceable.

Moreover, even if we were to accept plaintiff's argument that his employment agreement did not have to comply with the statute of frauds, defendants would still be entitled to summary judgment because plaintiff's employment with SAS was not for a definite term and was, therefore, terminable at will by either party. *Fortenberry v. Haverty Furniture Cos.*, 176 Ga. App. 360 (1) (335 SE2d 460) (1985). We reject plaintiff's argument that his employment agreement with defendants was for the definite term of "one year with automatic renewals" solely because the parties agreed he was to receive an annual salary of $60,000. Although OCGA § 34-7-1 provides that if "wages are payable at a stipulated period, the presumption shall arise that the hiring is for such period," this court has repeatedly held "that documents referring to an annual salary merely establish the total amount payable during a twelve-month period and not the duration thereof. The computation of the salaries on an annualized basis does not turn this compensation term into a duration term." *Gatins v. NCR Corp.*, supra at 597. Therefore, there is no presumption under OCGA § 34-7-1 that plaintiff was hired on a yearly basis, and a year-to-year contract does not result. *American Standard v. Jessee*, 150 Ga. App. 663, 665 (1) (258 SE2d 240) (1979). Because plaintiff's employment agreement was terminable at the will of either party, plaintiff has no cause of action for wrongful termination.

2. Plaintiff also contends the trial court erred in granting summary judgment to defendants on plaintiff's claims for fraud. In his

complaint plaintiff alleges that defendants fraudulently induced plaintiff to negotiate the transfer of KSK's business assets, including the company's customer lists, without any intent to honor its agreement to employ plaintiff. Our review of the record reveals that plaintiff has failed to set forth any specific facts in support of these allegations of fraud. Plaintiff merely argues that defendants must have known all along about plaintiff's ownership of Satsumaya because the Japanese community in Atlanta is very small and close knit, and Satsumaya was one of only two Japanese groceries in the metro-Atlanta area. "Conclusory allegations, without substantiating facts or circumstances, are not sufficient to raise a material issue for trial. [Cit.]" *Richard A. Naso &c. v. Diffusion*, 194 Ga. App. 201, 204 (390 SE2d 106) (1990).

Moreover, "the allegedly defrauded party must prove actual, not constructive, knowledge on the part of the defendant. [Cit.]" *Jackson v. Paces Ferry Dodge*, 183 Ga. App. 502, 504 (2) (359 SE2d 412) (1987). Thus, the deposition testimony of one of SAS' officers stating that defendants did not become aware of plaintiff's ownership of other businesses until after the assets of KSK were purchased and after employment by SAS was discussed with plaintiff was sufficient to pierce the allegations contained in plaintiff's complaint. *Richard A. Naso &c. v. Diffusion*, supra at 205.

Furthermore, "although fraud can be predicated on a misrepresentation as to a future event where the defendant knows the future event will not take place . . . fraud cannot be predicated on a promise which is unenforceable at the time it is made. And this is controlling in the instant case because the promises [of employment] upon which the [plaintiff] relies for establishing fraud were unenforceable even absent any fraud at the time of their utterance. The oral promises could not be enforced because the underlying employment contract, being terminable at will, is unenforceable." (Citations and punctuation omitted.) *American Standard v. Jessee*, supra at 666. See also *Taylor v. AMISUB*, 186 Ga. App. 834 (2) (368 SE2d 791) (1988). Accordingly, the trial court did not err in granting defendants' motion for summary judgment on plaintiff's fraud claims.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED APRIL 29, 1994 —
RECONSIDERATION DENIED MAY 24, 1994 —

Lamb & Associates, W. L. Henderson, for appellant.
Schreeder, Wheeler & Flint, Lawrence S. Burnat, for appellees.