A99A2472. YEARWOOD v. SOUTHERN LIFE SYSTEMS, INC.
(531 SE2d 741)

PHIPPS, Judge.

Southern Life Systems, Inc. was a distributor of medical equipment. When Southern's customers bought certain reusable products, they became contractually obligated to make future purchases of disposable parts from Southern for a specified time period. Southern's sales force was comprised of district managers. Under commission agreements with Southern, they were entitled to commissions based on the initial sale of the equipment and on later sales of parts. Brian Yearwood was a district manager. Following termination of his employment, Yearwood brought suit against Southern, complaining

that it had converted commissions due him on sales of parts by selling its customer accounts to another company. Yearwood claims an entitlement to a pro rata share of the proceeds from the sale of the accounts.

Southern moved for summary judgment, arguing that Yearwood is not entitled to post-employment compensation because he was an at-will employee who was lawfully terminated. Yearwood moved for partial summary judgment on the question of whether the parties' commission agreement entitled him to post-employment commissions. The trial court denied partial summary judgment to Yearwood and granted summary judgment to Southern, on the ground that Southern never promised or agreed to remit to Yearwood any monies received from the sale of the accounts.

An integral part of Southern's business was its sale of reusable thermometers to hospitals and other health care providers. The thermometers were manufactured by a company known as IMS and have two components: the thermometer itself and a disposable probe cover that allows the thermometer to be reused without sterilization. Under contracts referred to as System Placement Agreements (SPAs), a customer purchasing thermometers obligated itself to continue to purchase probe covers from Southern for periods generally ranging from one to five years. In turn, Southern obligated itself to provide training, maintenance, and repair services to the customer. A distributorship contract between Southern and IMS obligated IMS to supply Southern with disposable parts at preset prices during the term of the SPAs.

The commission agreements provided that district managers who sold thermometers under SPAs would receive commissions from Southern in two ways. For the customer's initial purchase of thermometers and entry into the SPA, a manager received a commission of 30 percent of the company's gross profit. For disposable probe covers sold to the customer during the term of the SPA, another commission of between 28 percent and 32 percent of gross profits was payable. Under the commission agreements, commissions were due on the fifteenth of each month based on "items paid by customers" through the end of the previous month. The agreements also provided that "[t]his plan can be modified at any time by the corporation."

During the term of Yearwood's employment from 1991 to 1994, Sherwood Medical Company bought IMS. Because Sherwood had a direct sales force of its own, it did not need distributorship services. Approximately one year after purchasing IMS, Sherwood ceased supplying thermometers and probe covers to Southern and other distributors. For business reasons, Southern decided not to pursue a claim against Sherwood for breach of the distributorship contract. Instead, Southern sold its SPAs to Sherwood. Under the buy/sell agreement,

the purchase price payable to Southern consisted of $1,550,000; another payment of $1,750,000 was paid to Southern's president in consideration of his entry into a noncompetition and consulting agreement. After Southern entered into the agreement with Sherwood, Southern's president informed the district managers that they would no longer receive commissions for future sales of equipment under the SPAs and that their compensation would be converted from a commission to a salary base. *Held*:

Although the commission agreement between Southern and Yearwood entitled him only to commissions based on the sale of the disposable covers to customers during the term of the SPAs, a question does arise about whether Southern breached its contractual obligation to pay the commissions by selling the SPAs without obligating the purchaser to continue commission payments. Resolution of this question turns on whether the commission agreement gave Yearwood an entitlement to commissions for the sale of the covers based on past or future services.

> It is true an employee cannot sue to enforce future performance of a terminable-at-will employment agreement. However, an employee may sue . . . for employment terminable at will "for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge, and not for damages or for compensation for services not performed. . . ." [Cit.][1]

In *McLane v. Atlanta Market &c. Co.*,[2] relied on by Yearwood, a real estate agent was entitled to commissions from her broker when tenants to whom the agent had rented office space entered into amendments to their leases through which they occupied additional square footage. This court held that the agent's right to commissions was not defeated by reason of the fact that the lease amendments were executed after her at-will employment was terminated. The basis for this holding was that the agent had earned the commissions based on services she had rendered before her employment ended (i.e., past services).

Did Yearwood earn his commission for the sale of disposable covers based on his initial placement of the SPAs (i.e., past services) or based on his servicing of the accounts during the period the customers purchased the disposable covers (i.e., future services)? Yearwood's deposition testimony shows that the commissions were earned based

---

[1] *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 359 (2) (359 SE2d 148) (1987).

[2] 225 Ga. App. 818, 822 (1) (486 SE2d 30) (1997) (physical precedent only), rev'd on other grounds, *Atlanta Market &c. Co. v. McLane*, 269 Ga. 604 (503 SE2d 278) (1998).

on future services. His testimony establishes that commissions on sales of the covers were paid to the district manager who serviced the account even if that person did not originate the account. Moreover, Yearwood acknowledged that district managers who left the company's employ did not thereafter receive commission payments. Consequently, Yearwood has no entitlement to commissions based on the sale of covers after his employment ended. Therefore, Southern has no liability to Yearwood for unpaid commissions.

For these reasons, the court did not err in its rulings on the parties' summary judgment motions.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 16, 2000 —
RECONSIDERATION DENIED APRIL 4, 2000 —

*Belcher, Pakchar & Sams, Pat E. Belcher II,* for appellant.
*Savage, Herndon & Turner, Brent J. Savage,* for appellee.