**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 22, 2020**

# In the Court of Appeals of Georgia

A20A0848. ZULKE v. AC&DC POWER TECHNOLOGIES, LLC.

COLVIN, Judge.

After defendant AC&DC Power Technologies, Inc. ("AC&DC") orally accepted plaintiff James Zulke's written counteroffer, Zulke began work at the company in May 2012. More than a year later, he was terminated. When AC&DC refused to pay Zulke some of the benefits specified in the counteroffer, Zulke brought this action for breach of contract and other claims. The trial court granted AC&DC summary judgment on the ground that Georgia's Statute of Frauds barred enforcement of the counteroffer's terms. On appeal, Zulke argues that the grant was in error because his at-will employment contract could have been performed within a year and because genuine factual questions remain as to his promissory estoppel claim. We agree and reverse.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c).

*Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

Thus construed in favor of Zulke as the nonmovant, the record shows that on April 19, 2012, after making a verbal offer, AC&DC emailed Zulke a written offer specifying the terms under which he would start working as the company's chief operations officer. The letter, dated March 13, 2012, had no commencement or duration dates concerning the employment, but provided for a "first year" salary of $130,000, with an incentive payment after "the first year of operations" conditional on meeting company goals in overhead reduction, profitability, and revenue increase. The offer also provided that "[a]fter the first year of operation," Zulke could "elect to receive 5% ownership in [AC&DC] as incentive pay."

On April 23, 2012, Zulke returned an edited version of the same document to his contact at AC&DC. This counteroffer left a new "timeframe" for the incentive payment incomplete, but added that if Zulke was "terminated for any reason during [the] first year," he would receive nine "monthly payments of the base salary amount

2

paid on the first of each month," reduced to six such payments if he was "terminated for any reason during the second or third years[.]" The counteroffer also made provisions for cell phone and internet allowances, transition travel, and temporary living expenses. After reviewing Zulke's counteroffer, his contact at AC&DC told him that the company "could live with everything that was in" the counteroffer. Zulke began his employment in May 2012.

Over the following fifteen or so months, the parties performed as specified in the accepted counteroffer, with Zulke electing to take a 5% ownership interest at the end of his first year and AC&DC paying his relocation and cell phone expenses and holding Zulke out to the public as a part owner. In September 2014, however, AC&DC terminated Zulke and later refused to pay him the value of his ownership interest, any incentive bonus, or severance pay. Zulke then filed this action for breach of contract, promissory estoppel, and costs and attorney fees.[1] AC&DC later moved for summary judgment on grounds including that Zulke's employment contract was barred by Georgia's Statute of Frauds. The trial court granted the motion, holding that Zulke's claims for breach of contract and promissory estoppel were both invalid.

---

[1] Zulke's complaint originally included a claim for tortious interference, which he later withdrew.

On appeal, Zulke argues that the grant of summary judgment was error because his contract of employment, including its benefit provisions, was not barred by the Statute of Frauds and because genuine questions of material fact remained as to his breach of contract and promissory estoppel claims. We agree with both of these contentions.

1. Georgia's Statute of Frauds provides that "'[a]ny agreement that is not to be performed within one year from the making thereof' must be in writing and signed by the party to be charged in order to be binding on the promisor." *Parker v. Crider Poultry*, 275 Ga. 361, 361 (1), n. 1 (565 SE2d 797) (2002), quoting OCGA § 13-5-30 (5). When an employment contract "[does] not state the duration of the term of employment," however, it is "terminable at the will of either party[.]" (Citation omitted.) Id. at 362 (1). Such a contract is not prohibited by the Statute of Frauds "because, at its inception, a contract of employment for an indefinite duration is an agreement *capable* of being performed within one year, and the *possibility* of performance of the contract within one year is sufficient to remove it from the statute[.]" (Emphasis supplied.) Id. Specifically, "[t]he number of years the parties operate under an employment contract of indefinite duration does not affect the applicability of the Statute of Frauds." (Citation omitted.) Id.

4

Williston puts the same matter this way:

It is well settled that the oral contracts made unenforceable by the statute because they are not to be performed within a year include *only* those which *cannot* be performed within that period. A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the statute if at the time the contract is made there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year. Moreover, *the fact that an at-will contract of employment actually lasts several years does not bring the contract within the statute, since either party could put an end to the contract within one year, and the contract would thereby be fully performed*.

(Footnotes omitted; emphasis supplied.) Williston on Contracts (4th ed.), § 24.3. The fact that some contingencies in a contract, such as the second and third-year incentives in this agreement, might not come to pass if the contract is terminated within a year does not mean that the contract containing such contingencies is unenforceable. Rather, "if an agreement whose performance would otherwise extend beyond a year *may* be completely performed within a year on the happening of some contingency, it is *not* within the statute of frauds." (Footnote and punctuation omitted; emphasis supplied.) Id.; see also *Vernon v. Assurance Forensic Accounting, LLC*, 333

5

Ga. App. 377, 387-388 (1) (774 SE2d 197) (2015) (applying Williston to authorize a claim for breach of contract).[2]

Zulke seeks to enforce the incentive and severance terms in this oral employment agreement, under which the parties performed for more than a year.[3] It is undisputed that Zulke's employment was terminable at will, with both sides contemplating that he could be terminated "for any reason during [the] first year." Arguably, Zulke earned his 5% ownership interest and six months of severance pay when he continued to work into his second year. At that time, these provisions to pay

_____

[2] "Illustrations of the lengths to which courts will go to avoid the strictures of the statute under these or similar circumstances are abundant. Thus, in one case, the court ruled that an oral contract for the plaintiff to serve as construction manager on a $120 million project with no duration specified, but anticipated by the parties to last from three to 10 years, was not within the statute, holding 'that an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of how long completion of performance will actually take.'" (Footnote omitted.) Williston, § 24.3.

[3] These parties did not sign either of the writings at issue. For this reason, and because the plaintiff in *Ikemiya v. Shibamoto America, Inc.,* 213 Ga. App. 271 (444 SE2d 351) (1994), never sought to enforce that employment contract, which was merely prospective, our decision in *Ikemiya* is inapposite. See id. at 272-273 (1) (affirming a grant of summary judgment as to a claim for wrongful termination when there was insufficient part performance to validate the employment contract at issue, which did not specify salary, length of employment, or termination requirements).

were no longer merely executory promises, but enforceable as "based on services actually performed by [Zulke] up to the time of his discharge[,]" *Keith*, 183 Ga. App. at 359 (2), which did not occur until well into his second year. Zulke's claim as to these contract provisions is thus a matter of restitution rather than expectation, which we are not authorized to ignore. See generally *PMS Const. Co. v. DeKalb Cty*., 243 Ga. 870, 872 (2) (257 SE23d 285) (1979) (reversing a Court of Appeals decision "[i]nsofar as [it] intimates that restitution is an inappropriate remedy" for breach of contract). Questions of fact remain as to not only Zulke's 5% ownership interest, but also as to the six "monthly payments of the base salary amount paid on the first of each month," because these payments could have been rendered in a lump sum at the time of his termination.

Although AC&DC asserts that the terms at issue here were unenforceable as not vesting in Zulke before one year, the authorities AC&DC cites do not support its position. In *E.D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357 (359 SE2d 148) (1987), we rejected an attack on the enforcement of a commission already earned as follows:

> [A]n employee may sue on an oral contract for employment terminable at will for the amount of compensation due him, *based upon services actually performed by him up to the time of his discharge*, and *not* for damages or for compensation for services *not* performed[.]

7

(Citation and punctuation omitted; emphasis supplied.) Id. at 359 (2). We reversed the denial of summary judgment in *Keith* as to a prospective bonus when the employee resigned before the end of his first year, however, because although "a promise to pay wages of a sum certain is enforceable after performance by the employee, a promise to change the terms of compensation *in the future* is *not* enforceable." (Emphasis supplied.) Id. at 360 (3). See also *Bithoney v. Fulton-DeKalb Hosp. Auth.*, 313 Ga. App. 335, 342-343 (1) (721 SE2d 577) (2011) (oral agreement to pay severance over a 15-month period could not be performed within a year and was therefore barred by the Statute of Frauds).

As we have explained, this employment agreement was capable of being performed within one year because it was terminable at any time by either party. Further, Zulke arguably earned severance pay in a sum certain for services already performed at the commencement of the agreement's second year. The enforcement of the benefit provisions at issue was therefore not barred by the Statute of Frauds, and the trial court erred when it granted AC&DC summary judgment on that basis. *Parker*, 275 Ga. at 362 (1) (reversing the Court of Appeals' determination that the employment agreement at issue was within the Statute of Frauds when the plaintiff seeking to enforce the agreement had completed over a year of employment under the

8

contract); *Vernon*, 333 Ga. App. at 388 (1) (whether two parties agreed to the payment of severance was for a jury to decide when the contract at issue "could have commenced on the same day that the agreement was reached and [could] have been completed within one year"); *Keith*, 183 Ga. App. at 359-360 (2) (affirming the denial of summary judgment as to commissions due an employee discharged under a terminable-at-will employment contract).

2. The trial court also erred when it granted summary judgment as to Zulke's alternative promissory estoppel claim.

> Even when a promise is unenforceable as a contract, a promisee may recover under a theory of promissory estoppel because "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a).

(Citations and punctuation omitted.) *Cheeley Investments, L. P. v. Zambetti*, 332 Ga. App. 115, 119 (2) (770 SE2d 350) (2015).

Here, a trier of fact could conclude that in exchange for Zulke's completion of a year of service, AC&DC promised him benefits including an ownership interest, an incentive bonus, and severance pay. AC&DC's promise to pay these benefits was part

9

of its acceptance of Zulke's counteroffer, which was not affected by the parties' termination of his at-will employment in September 2014, months after he had passed his first anniversary with the firm. This claim should also have been left to a jury. *Cheeley Investments*, 332 Ga. App. at 119-120 (2) (whether a promise "acted as a catalyst that induced [plaintiff] to incur legal expenses, and whether such reliance was reasonable under the circumstances, are questions for the jury"); *Brown v. Rader*, 299 Ga. App. 606, 611-612 (2) (a) (683 SE2d 16) (2009) (questions of fact remained as to whether plaintiff tenants reasonably relied on a tenant landlord's promises to pay for remediation of a property rather than end a lease); *Rental Equipment Group, LLC v. MACI, LLC*, 263 Ga. App. 155, 157-159 (1) (587 SE2d 364) (2003) (issue whether a promise to buy businesses was enforceable precluded a directed verdict on sellers' breach of contract and promissory estoppel claims).

*Judgment reversed. Reese, P. J., and Markle, J., concur*.