NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 29, 2024

S23G0791. WORTH COUNTY SCHOOL DISTRICT v. TIBBETTS.

ELLINGTON, Justice.

Appellant Worth County School District ("the District") employed appellee John R. Tibbetts ("Tibbetts") as a teacher. After the District offered Tibbetts a contract of employment for the upcoming school year, the District sent Tibbetts a certified letter notifying him that it had not received his signed contract within the time allowed and his employment would end when his contract for the current school year ended. Thereafter, Tibbetts brought a breach of contract action against the District, alleging that the contract offered to him did not comply with Georgia's statutory requirements for teacher contracts because it was missing terms and contained blanks. Therefore, Tibbetts contended, the contract offered did not operate as a valid offer, and his employment contract for the prior

school year was renewed by operation of law pursuant to OCGA § 20-2-211 (b), which prescribes the manner of annually renewing or not renewing the employment contracts of teachers and other certificated professional personnel.

The District moved for summary judgment, arguing, among other things, that sovereign immunity barred Tibbetts's breach of contract action. The trial court agreed, holding that there was no existing written contract between the parties that operated to waive sovereign immunity under the ex contractu clause of the Constitution of the State of Georgia, Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). In granting the District's motion, the trial court found that the District offered Tibbetts a contract that complied with OCGA § 20-2-211 (b), but that Tibbetts did not timely accept that offer. "Under these facts," the trial court concluded, "OCGA § 20-2-211 (b) does not clearly indicate a renewed contract by operation of law and does not provide a basis for Mr. Tibbetts to establish a clear waiver of sovereign immunity." Tibbetts appealed the trial court's order to the Court of Appeals.

2

In *Tibbetts v. Worth County School District*, 367 Ga. App. 246 (885 SE2d 291) (2023), the Court of Appeals reversed the trial court. It determined that the contract the District offered Tibbetts for the upcoming school year failed to comply with the requirements of OCGA § 20-2-211 (b); therefore, Tibbetts's contract for the previous school year was renewed by operation of law pursuant to OCGA § 20-2-211 (b) and constituted a contract in writing as required by OCGA § 20-2-211 (a). *Tibbetts*, 367 Ga. App. at 248-250 (2)-(4); see id. at 249 (4) ("The literal language of OCGA § 20-2-211 [(a)] requires all teachers to have written employment contracts[.]" (emphasis in original)). The Court of Appeals reasoned, therefore, that Tibbetts's claim was one for breach of a written contract, and sovereign immunity was waived pursuant to the ex contractu clause. Id. at 247-248 (2). The Court of Appeals held that the trial court erred in granting summary judgment to the District and reversed the trial court's order. Id. The District then petitioned this Court for a writ of

certiorari to the Court of Appeals, and we granted it.[1]

We asked the parties to address whether the employment contract the District offered to Tibbetts for the 2019-2020 school year complied with the requirements of OCGA § 20-2-211 (b) and, if it did not, whether Tibbetts's existing written employment contract for the previous school year was renewed by operation of law, such that sovereign immunity is waived for Tibbetts's breach of contract claim.[2] As explained below, we hold that the Court of Appeals erred in reversing the grant of summary judgment in favor of the District because the employment contract the District offered Tibbetts for

---

[1] We granted the writ of certiorari on November 7, 2023. The case was docketed to the term beginning in December 2023 and orally argued on March 21, 2024.

[2] We asked the parties to address these questions:

(1) Did the employment renewal contract that was offered to [Tibbetts] for the 2019-2020 school year comply with the requirement in OCGA § 20-2-211 (b) that "[s]uch contracts . . . shall be complete in all terms and conditions of the contract, including the amount of compensation to be paid to such teacher . . . during the ensuing school year, and shall not contain blanks or leave any terms and conditions of the contract open?"

(2) If the contract did not comply with that requirement, was [Tibbetts's] existing written employment contract renewed by operation of law, such that sovereign immunity is waived under Article I, Section II, Paragraph IX (c) of the Georgia Constitution of 1983 for a claim of breach of such a renewed contract?

4

the 2019-2020 school year satisfied the requirements of OCGA § 20-2-211 (b). Because Tibbetts failed to timely accept this offer, no written contract exists to support Tibbetts's claim for breach of a written contract. Absent such a claim, there is no waiver of sovereign immunity pursuant to the ex contractu clause.

*1. Standard of Review, Pertinent Facts, and Procedural History.*

"On appeal from a grant of summary judgment, we review legal questions de novo and review the evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact." (Citation omitted.) *Milliken & Co. v. Ga. Power Co.*, 306 Ga. 6, 8 (1) (829 SE2d 111) (2019). So viewed, the record shows that the District employed Tibbetts as a teacher during the 2018-2019 school year pursuant to a written contract for employment that expired at the end of the school year, as defined by the District's annual calendar. The contract did not specify Tibbetts's salary in dollars; rather, it set Tibbetts's salary with reference to the State Salary Schedule for a person with Tibbetts's

5

certification level and 14 years of experience.[3] Tibbetts's prior employment contracts with the District – for the 2015-2016, 2016-2017, and 2017-2018 school years – also referred to the salary schedule rather than listing a specific salary amount.

On March 21, 2019, the District's superintendent recommended that the Worth County Board of Education offer Tibbetts a contract for the 2019-2020 school year, and the Board did so. The District made the offer by posting Tibbetts's written employment contract to its online system on March 29, 2019. Like the District's previous employment contracts, the 2019-2020 contract did not list a specific salary amount; rather, it referenced the State Salary Schedule for teachers with 15 years of creditable

---

[3] OCGA § 20-2-212 (a) provides, in pertinent part: "The State Board of Education shall establish a schedule of minimum salaries for services rendered which shall be on a ten-month basis and which shall be paid by local units of administration to the various classifications of professional personnel required to be certificated by the Professional Standards Commission." Further, "[a] local unit of administration shall not pay to any full-time certificated employee a salary less than that prescribed by the schedule of minimum salaries, except as required by this Code section[.]" Id. Local school boards are required to "place each employee holding a renewable certificate or non-renewable certificate on the State Salary Schedule that corresponds to the employee's creditable years of experience." Ga. Comp. R. & Regs. 160-5-2-.05 (3) (a).

6

service and a "T5 certificate level."[4] The contract also contained blank spaces for Tibbetts's Social Security Number, his signature, and the date he accepted the contract. On March 31, 2019, the District's human resources director emailed Tibbetts with a link to complete the form contract. The email stated: "If you are accepting this contract, it must be signed and submitted by Monday, April 15, 2019." See OCGA § 20-2-942 (b) (6) ("Local boards shall make contract offers available to teachers for a minimum ten-day review period. A teacher accepts the contract by signing and returning it any time during the ten-day period."). On April 12, 2019, the director sent an email to all District employees with outstanding offers, including Tibbetts, reminding them of the April 15 acceptance and return deadline. Three days later, on April 15, 2019, the superintendent sent an email to all principals in the District,

---

[4] The contract tendered to Tibbetts provided that his annual salary is based upon a T5 certificate level and 15 years of creditable service to be paid in accordance with the salary schedules and work schedules adopted by the employer. The salary specified herein may be subject to adjustment according to the anticipated budget for the 2019-2020 school year and . . . is conditioned upon the continued availability of state funds under appropriation acts.

7

instructing them to remind teachers to sign and return their contracts on time and that untimely returns would be treated as refusals of the offered employment.

While the District's offer was pending, Tibbetts sought employment in other school districts, Tift County and Cook County. In his sworn deposition, Tibbetts said that if he had received an offer from either of those school districts, he would have accepted a job with it instead and he would not have filed the instant lawsuit.

Tibbetts said that he signed and returned the District's offered employment contract to the District through the online system on April 15, 2019; however, there is no documentary evidence in the record that the employment contract was received by the District – either through its online system or otherwise. Tibbetts received no email confirmation that the contract had been successfully submitted on April 15, nor did he receive an error message from the online system indicating that the contract had not been submitted. Tibbetts also said that he physically returned a copy of the contract to the District, but the document he claims he submitted varied from

8

the form generated by the online system, lacked the oath of allegiance, and had no marks indicating that it was received by the District.

After the April 15 deadline for receiving accepted contracts had passed, the District's human resources director sent Tibbetts a certified letter informing him that his signed contract had not been received, thanked him for his service, and wished him luck in his future endeavors. On May 4, 2019, Tibbetts sent the director an email with an attachment of the contract that he contends he signed on April 15. According to her sworn affidavit, the director again checked the online system but was unable to locate Tibbetts's signed contract in the system. If the contract had been submitted, it would have appeared in his personnel file. She found no other documents associated with Tibbetts's name in the system. The system showed only that the contract was sent to Tibbetts on March 29, 2019, and was 21 days overdue. On May 14, the director informed Tibbetts that because the District had not received his signed contract by the deadline, his "employment with the Worth County School District

9

[would] end at the conclusion of [his] 2018-2019 contract."

On May 17, 2019, Tibbetts emailed the human resources director and inquired if his name was included on the list of approved contracts. She informed Tibbetts that he had been recommended for renewal on March 21, 2019, and was issued a contract offer on March 29, 2019, but that he had failed to accept the offer by signing and returning the contract by the April 15, 2019, deadline. Later that same day, the superintendent told Tibbetts that the School District was not going to offer him a contract after the deadline. On several occasions, the director contacted the online system's support staff to ensure that there had been no system errors when Tibbetts had allegedly attempted to return his employment contract, and she was assured that no such errors had occurred. No other employee complained of having problems accepting and returning their contracts through the online system, and no other employee returned a contract after the deadline.

The District has a policy of not accepting late contracts or making exceptions for noncompliant teachers. When Tibbetts failed

to return his contract on time, the District believed that he had declined the offer and had accepted employment elsewhere. Consequently, the District began hiring for his position so that it would have enough teachers for the following year. In her affidavit, the human resources director stated that "[a]t no point was Mr. Tibbetts discharged, suspended, or demoted by the Worth County Board of Education. Mr. Tibbetts is currently not employed by the Worth County Board of Education because he failed to accept his employment contract within the time period provided." Tibbetts ultimately signed and returned a contract to work in the Lee County School District for the 2019-2020 school year. The Lee County contract did not include a specific salary amount, but, like the District's contract, referenced Tibbetts's certification level and years of experience.

2. *Analysis.*

Sovereign immunity is a threshold issue that must be addressed prior to resolving the merits of Tibbetts's breach of contract claim. See, e.g., *Bray v. Watkins*, 317 Ga. 703, 704 (895

11

SE2d 282) (2023) (holding that the trial court was not authorized to address the merits of claims that could have been barred by sovereign immunity, without first conducting a threshold jurisdictional review of such claims). The District is entitled to sovereign immunity, see *Thigpen v. McDuffie County Bd. of Educ.*, 255 Ga. 59, 59 (335 SE2d 112) (1985) (holding that sovereign immunity extends to the state and all of its departments and agencies, which includes the McDuffie County Board of Education), unless Tibbetts has carried his burden of showing a waiver of the District's immunity, see *Ga. Dept. of Labor v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it."). Further, "[i]mplied waivers of sovereign immunity are generally disfavored." *Dept. of Transp. v. Mixon*, 312 Ga. 548, 550 (2) (a) (864 SE2d 67) (2021). Tibbetts contends that he carried his burden of showing a waiver of sovereign immunity under the ex contractu clause of the Georgia Constitution, see Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c), based on the following argument.

Tibbetts argued that the employment contract offered to him by the District for the 2019-2020 school year failed to comply with OCGA § 20-2-211 (b) because the contract contained blanks and was missing terms, like his salary amount, such that his written contract from the previous year was automatically renewed under OCGA § 20-2-211 (b).[5] The Court of Appeals agreed, characterizing the

[5] OCGA § 20-2-211 (b) provides:

Any other provisions of this article or any other laws to the contrary notwithstanding, each local governing board shall, by not later than May 15 of the current school year, tender a new contract for the ensuing school year to each teacher and other professional employee certificated by the Professional Standards Commission on the payroll of the local unit of administration at the beginning of the current school year, except those who have resigned or who have been terminated as provided in Part 7 of Article 17 of this chapter, or shall notify in writing each such teacher or other certificated professional employee of the intention of not renewing his or her contract for the ensuing school year. Such contracts when tendered to each teacher or other professional employee shall be complete in all terms and conditions of the contract, including the amount of compensation to be paid to such teacher or other professional employee during the ensuing school year, and shall not contain blanks or leave any terms and conditions of the contract open. A letter of intent or similar document shall not constitute a contract and shall not be construed to require or otherwise legally bind the teacher or other professional employee to return to such school system. Upon request, a written explanation for failure to renew such contract shall be made available to such certificated personnel by the executive officer. When such notice of intended termination has not been given by May 15, the employment of such teacher or

13

offered employment contract as "nonconforming." *Tibbetts*, 367 Ga. App. at 248-249 (2). Moreover, although the District did not receive Tibbetts's acceptance of the offered contract before the April 15 deadline, the Court of Appeals nevertheless concluded that offering Tibbetts a nonconforming contract could not "displace the procedure the statute mandates[,]" implying that the District's offer was no offer at all. See id. at 249 (2). Because the District offered Tibbetts a nonconforming contract that he was not required to accept, the Court of Appeals reasoned, Tibbetts's previous year's written contract was renewed by operation of law under OCGA § 20-2-211 (b) and "the renewed contract remained a contract in writing." *Tibbetts*, at 250 (4). Having identified the existence of a written contract, the Court of Appeals held that "sovereign immunity has been waived, and Tibbetts is entitled to sue for breach." Id. As explained below, this analysis is flawed because it is based on the

---

other certificated professional employee shall be continued for the ensuing school year unless the teacher or certificated professional employee elects not to accept such employment by notifying the local governing board or executive officer in writing not later than June 1.

faulty assumption that the District offered Tibbetts a nonconforming contract.

Code Section 20-2-211 (b) provides, in pertinent part, that the contract tendered to each teacher "shall be complete in all terms and conditions of the contract . . . , including the amount of compensation to be paid to such teacher . . . during the ensuing school year, and shall not contain blanks or leave any terms and conditions of the contract open." Id. The Court of Appeals stated that it did "not reach the issues arising from the blanks in the contract tendered by the District." *Tibbetts*, 367 Ga. App. at 247 (1). However, it concluded that the contract was "nonconforming" because it did not meet the statutory requirement that it

> "includ[e] the amount of compensation to be paid to [Tibbetts] during the *ensuing* school year[.]" OCGA § 20-2-211 (b) (emphasis supplied). Instead[,] the offer referenced a salary schedule. Although the District argues this reference was sufficient because it referenced the schedule in place at that time, that schedule pertained to the prior school year, not the ensuing school year.

(Emphasis supplied.) Id. at 248 (3). Although the Court of Appeals did not address whether the presence of blanks in Tibbetts's

employment contract would render it nonconforming, we asked the parties to address whether the contract offered for the 2019-2020 school year complied with the requirement of OCGA § 20-2-211 (b) because it contained blanks and omitted Tibbetts's salary amount.[6]

The contract did not specify a specific dollar amount for Tibbetts's salary, and it contained blanks for Tibbetts's Social Security Number, his signature, and the date he signed the contract. As explained below, Tibbetts's salary amount was stated with sufficient specificity and the blanks do not represent missing terms and conditions of a contract for employment under OCGA § 20-2-211(b). Consequently, Tibbetts's contract of employment was not, as the Court of Appeals concluded, nonconforming under the statute.

First, with respect to Tibbetts's salary, that term was not left blank. Rather, Tibbetts's salary was specified in the contract by referencing the published State Salary Schedule set by the General Assembly and the State Board of Education. Code Section § 20-2-212 (a) provides, in part, that the "General Assembly shall annually

_____

[6] See supra note 2.

16

appropriate funds to implement a salary schedule for certificated professional personnel. For each state fiscal year, the state board shall adopt the salary schedule for which funding has been appropriated by the General Assembly." That subsection also provides, in pertinent part, that "[t]he State Board of Education shall establish a schedule of minimum salaries for services rendered[,]" and that "[t]he placement of teachers on the salary schedule shall be based on certificate level and years of creditable experience[.]" Additionally, local school boards are required to "place each employee holding a renewable certificate or non-renewable certificate on the State Salary Schedule that corresponds to the employee's creditable years of experience." Ga. Comp. R. & Regs. 160-5-2-.05 (3) (a). Thus, Tibbetts could determine the exact amount of his salary by referring to the State Salary Schedule for a person with his level of certification and years of creditable experience.

This Court has held that a contract term setting employee compensation is sufficiently definite where it is based on a method or formula for determining the exact amount of compensation. See

17

*Arby's Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995) (recognizing that "[t]o be enforceable, a promise of future compensation must be made at the beginning of the employment[,]" and that "the promise of future compensation must also be for an exact amount or based upon a 'formula or method for determining the exact amount'" (citations and emphasis omitted)). Tibbetts's contention that the rule in *Arby's* must yield to the "specific rule" rule in OCGA § 20-2-211 (b) has no merit. There is nothing in OCGA § 20-2-211 (b) that rejects the use of a salary schedule; it only requires the contract to set forth the "amount of compensation." Moreover, construing OCGA § 20-2-211 (b) in light of OCGA § 20-2-212 (a),[7] which requires the annual funding and publishing of a mandatory State Salary Schedule for teacher compensation, the District had no choice but to express Tibbetts's salary with reference to the salary schedule because the salary schedule for the upcoming

---

[7] See generally *Butterworth v. Butterworth*, 227 Ga. 301, 303-304 (180 SE2d 549) (1971) (Setting forth the "elementary rule of statutory construction" that statutes "in pari materia," i.e., statutes relating to the same subject matter, must be construed together.).

2019-2020 school year had not yet been set when the District offered to renew his contract.

Although the State Salary Schedule for the upcoming school year had not yet been published when the District offered Tibbetts his contract, the schedule from the prior year was still in effect. Moreover, the contract expressly provided that Tibbetts's salary "may be subject to adjustment according to the anticipated budget for the 2019-2020 school year and . . . is conditioned upon the continued availability of state funds under appropriation acts." Accordingly, when the District extended its contract offer in March, it expressly informed Tibbetts that he was to be paid based on his certificate level and years of creditable service, according to the State Salary Schedule. And, when the State updated its salary schedules, his pay automatically would be adjusted in accordance with that schedule. Thus, the compensation term the contract offered Tibbetts was easily ascertainable, sufficiently definite, and not left open or up to the discretion of the District. Cf. *Arby's, Inc.,* 265 Ga. at 241 (holding that a promise of a future bonus that was

only partially tied to a formula and was otherwise left to a supervisor's discretion was not a sufficiently definite promise of future compensation to be enforceable). For this reason, the Court of Appeals erred in finding that Tibbetts's contract for the ensuing school years failed to conform with OCGA § 20-2-211 (b) because it referenced the State Salary Schedule. See *Tibbetts*, 367 Ga. App at. 248 (3).

Second, the "blanks" on the contract the District offered Tibbetts for the upcoming school year – spaces for Tibbetts's Social Security Number, signature, and the date of his acceptance – did not violate OCGA § 20-2-211 (b) because those blanks did not represent a missing term or condition of the contract. The statute's requirement that the contract "not contain blanks" must be read in context. To discern the meaning of text of a statute we "must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes." (Footnote omitted.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999).

20

Code Section § 20-2-211 (b) provides, in pertinent part:

> Such contracts when tendered to each teacher or other professional employee shall be complete in all terms and conditions of the contract, including the amount of compensation to be paid to such teacher or other professional employee during the ensuing school year, and shall not contain blanks or leave any terms and conditions of the contract open.

Here, the key context is the surrounding statutory language. That language makes clear that the "blanks" the statute is concerned with are not just any "blanks," but blanks that leave out "terms and conditions" of the contract. The statute states that the contract "when tendered to each teacher . . . shall be complete in all terms and conditions . . . and shall not contain blanks or leave any terms and conditions of the contract open." In other words, the statute expresses an affirmative requirement – the contract must be "complete in all terms and conditions" – and then states how that requirement could be violated – by leaving "blanks" or "open" terms and conditions. Put simply, this language merely makes sure that the teacher to whom a contract is tendered under this provision can determine the terms and conditions of the contract by looking at the

tendered contract. Given this understanding, the spaces for Tibbetts's social security number, signature, and date are plainly not the kind of nonconforming "blanks" contemplated by the statute.

The lines on the contract for Tibbetts's signature and the date of acceptance must, of necessity, be given to him blank because his signature and the date he signed indicate when he accepted the contract. The date and signature blanks are blanks provided for Tibbetts to denote his acceptance, and it would make no sense for the contract to fail under the plain language of OCGA § 20-2-211 (b) because it contained such blanks when the District tendered it to Tibbetts. Similarly, the fact that the District's contract left the line for Tibbetts's Social Security Number blank would not stymie Tibbetts's ability to determine the terms and conditions of the contract by reading the tendered contract. If the District, as Tibbetts's employer, did not have Tibbetts's Social Security Number on file, Tibbetts could simply provide it to the District when he completed any forms required to process his pay, such as tax-withholding forms. Also, as with the blank left for his signature,

Tibbetts could have filled in the blank provided for his Social Security Number himself when he accepted the contract. These spaces do not reflect missing terms or conditions, but merely the method by which a teacher may indicate acceptance of the contract. Indeed, when a contract is tendered to another party, it is expected that the contract would leave a space for the other party to fill in identifying information (here, a name and social security number) and then sign and date the contract to indicate the party's acceptance. For these reasons, the blanks left on the contract for Tibbetts's Social Security Number, signature, and date did not render the contract nonconforming under OCGA § 20-2-211 (b).

The Court of Appeals reasoned that the District's "nonconforming contract" offer for the upcoming school year triggered the "automatic renewal provision" of OCGA § 20-2-211 (b), resulting in a written contract. *Tibbetts*, 367 Ga. App at. 246. The Court of Appeals then determined, based on that contract, that the District's sovereign immunity had been waived and that Tibbetts was entitled to sue for breach of contract pursuant to "the ex

23

contractu clause of our state Constitution, Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c)." Id. However, as explained above, the District's contract offer satisfied the requirements of OCGA § 20-2-211 (b). It was not a nonconforming offer that would result, according to the Court of Appeals' analysis, in the renewal of the previous year's contract. Thus, there was no renewed contract to support a waiver of sovereign immunity under the ex contractu clause of the Georgia Constitution.

Further, because Tibbetts failed to accept the written contract the District offered to him for the upcoming school year by signing and returning the contract before the April 15 deadline, no binding contract was formed based on the District's March 21 offer. See, e.g., *Robinson v. Tate*, 217 Ga. 93 (121 SE2d 21) (1961) (holding that, where acceptance of a contract was required by the offer to be received within a stated time, there was no contract where acceptance was not so received and there was nothing more to show that the offer remained open or that the late acceptance became a counter-offer accepted by the offeror). See also OCGA § 20-2-942 (b)

24

(6) ("Local boards shall make contract offers available to teachers for a minimum ten-day review period. A teacher accepts the contract by signing and returning it any time during the ten-day period." (emphasis supplied)). Consequently, there is no written contract at issue in this case.

Rather, the undisputed facts support the trial court's finding that Tibbetts simply failed to accept and return the offered contract of employment within the deadline set by the District. Therefore, Tibbetts has not carried his burden of showing a waiver of sovereign immunity based upon the ex contractu clause of the Georgia Constitution. See, e.g., *RTT Assocs., Inc.*, 299 Ga. at 81 (1) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it."); *Layer v. Barrow County*, 297 Ga. 871 (1) (778 SE2d 156) (2015) ("Although sovereign immunity has been waived for actions ex contractu for the breach of any *written* contract, sovereign immunity generally will bar a lawsuit for breach of an unwritten contract. And sovereign immunity also will bar a lawsuit for damages upon quasi-contractual theories of liability in

the absence of a written contract." (citations and punctuation omitted; emphasis original)).

For the foregoing reasons, the Court of Appeals erred in finding a waiver of sovereign immunity under these circumstances and by reversing the trial court's order granting summary judgment in favor of the District on this ground.

*Judgment reversed. All the Justices concur.*