**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 10, 2026**

# In the Court of Appeals of Georgia

A26A0698. HENRY COUNTY SCHOOLS et al. v. GRANT.

A26A0699. HENRY COUNTY SCHOOLS et al. v. DOUGLAS.

A26A0700. HENRY COUNTY SCHOOLS et al v. FORBES.

MARKLE, Judge.

In these related interlocutory appeals, Henry County Schools and several of its employees appeal from the denial of their motions to dismiss the state law tort and contract claims, and the employment discrimination suits brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USCA § 2000e-2 et seq., by three former employees on the grounds that (1) the suits were barred by sovereign and official immunity, and (2) the plaintiffs failed to state a claim under OCGA § 9-11-12(b)(6). For the reasons that follow, we reverse the denial of the motions with regard to the state law claims asserted against all defendants as either barred by immunity or

for failure to state a claim, we vacate the order as to the Title VII claims against the school district, and we remand the cases with direction.

"We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity." *Loehle v. Ga. Dep't of Pub. Safety*, 334 Ga. App. 836, 836–37 (780 SE2d 469) (2015) (quotation marks omitted). See also *Ga. Dep't of Labor v. RTT Assocs.*, 299 Ga. 78, 81(1) (786 SE2d 840) (2016). We also review the trial court's order on a motion to dismiss for failure to state a claim de novo, taking the allegations in the complaint as true and resolving any doubts in the plaintiffs' favor. *Williams v. DeKalb County*, 308 Ga. 265, 270(2) (840 SE2d 423) (2020).

Based on the allegations in the complaints, the records shows that Tyrome Grant, Sr., a Black male, is the former principal of Oakland Elementary School, which has a predominantly Black student body, in Henry County. Beginning in 2019, he voiced concerns regarding staffing shortages and transportation issues at his school that he believed did not exist at predominantly white schools. Thereafter, the assistant

superintendent allegedly responded by assigning a mentor to him, began visiting the school at inappropriate times, and took control over certain transportation duties. As a result, in 2023, Grant resigned his position.

Plaintiff Malik Douglas, a Black male army reservist, was the principal of Eagles Landing Middle School, a predominantly Black school, in 2019. Douglas also complained to district staff about transportation issues for his students. Additionally, during his tenure, the assistant superintendent "recruited administrators to undermine [his] authority," resulting in false complaints being filed against him with the school district. After he discussed his concerns with district staff, his contract for renewal was delayed. He was also told that his style was too militant, which he perceived as discrimination due to his military service. Ultimately, he was put on leave and denied promotions or other positions.

Kathleen Forbes, a Black/Panamanian woman, was the principal at Stockbridge Middle School until 2021, when her contract was not renewed. During her tenure, she was subject to harassment; district employees demeaned her professional skills; and she was demoted to a position as assistant principal at McDonough High School. When she complained that she had been threatened with termination, she was placed

in a "Professional Development Plan." She later applied for the principal position and was denied an interview. She ultimately resigned her position.

All three then filed separate suits, alleging breach of contract, and race discrimination, harassment, and retaliation under Title VII against the school district; and intentional infliction of emotional distress and breach of fiduciary duty against the school district and its employees in their individual and official capacities. Douglas also alleged that he was discriminated against because of his military status. They requested compensatory and punitive damages.

The school district moved to dismiss all three complaints as barred by sovereign and official immunity, as well as for failure to state a claim. Following a hearing, the trial court denied the motions. It then certified its orders for immediate review, and we granted the interlocutory applications. These appeals followed.

1. We begin with the threshold question of subject matter jurisdiction, that is, whether the claims against the school district and the employees in their official capacities are barred by sovereign immunity.

> Sovereign immunity is immunity from suit, involving actions or claims against the state and its departments, agencies, officers, and employees. The Georgia Constitution provides that the General

4

Assembly may waive the immunity of counties, municipalities, and school districts by statute. ... [T]he applicability of sovereign immunity to claims brought against the State is a jurisdictional issue and therefore, the applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.

*Ga. Div., Sons of Confederate Veterans v. Downs*, 370 Ga. App. 669, 675(2) (898 SE2d 850) (2024) (citation modified). Constitutional sovereign immunity extends to counties and school districts. *McBrayer v. Scarbrough*, 317 Ga. 387, 391-92(2)(a) (893 SE2d 660) (2023). And, where the State or school district enjoys immunity, public employees who are sued in their official capacities are also entitled to sovereign immunity. *Cameron v. Lang*, 274 Ga. 122, 126(3) (549 SE2d 341) (2001). See also Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; OCGA § 36-33-1.

In addition to state constitutional immunity, the Eleventh Amendment provides immunity from suit against federal claims in state court. U. S. Const. Amend. XI. But that immunity does not extend to "lesser entities" unless they are "an arm of the [S]tate." *Ga. Ports Auth. v. Lawyer*, 304 Ga. 667, 668(1) (821 SE2d 22) (2018). The burden is on the plaintiffs to show sovereign immunity has been waived. *Alred v. Ga.*

*Pub. Def. Council*, 362 Ga. App. 465, 466 (869 SE2d 99) (2022). See also *Dep't of Pub.*

*Safety v. Justice*, 320 Ga. 149, 153(2) (907 SE2d 817) (2024).

With this framework in mind, we consider whether the plaintiffs met their

burden to show a waiver of sovereign immunity for their various federal and state law

claims.

(a) *Is there a waiver of immunity for Title VII claims in state court?*[1]

The school district argues that the trial court lacked subject matter jurisdiction

over the discrimination claims because there is no waiver of immunity in state court

for Title VII claims. The plaintiffs contend that the school district is not an arm of the

State and thus was not entitled to immunity under the Eleventh Amendment.[2]

---

[1] The trial court considered Douglas's claim for military discrimination under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 USC § 4311, et seq. We have held that there is no waiver of immunity for USERRA claims in state court. *Anstadt v. Bd. of Regents of the Univ. Sys. of Ga.*, 303 Ga. App. 483, 486-87(1) (693 SE2d 868) (2010).

[2] The State is immune from federal claims brought in state court under the Eleventh Amendment if the state would be immune from suit on those claims in federal court. See *Augusta Jud. Circuit Off. of Pub. Def. v. Hodge-Peets*, 370 Ga. App. 819, 822(2) (899 SE2d 363) (2024). Title VII claims contain a waiver of immunity in federal court. See 42 USC § 2000e-5(f)(3); *Fitzpatrick v. Bitzer*, 427 US 445, 456 (96 SCt 2666, 49 LE2d 614) (1976); *Collier v. Clayton County Comm. Serv. Bd.*, 236 F Supp2d 1345, 1370(III)(A)(2) (N. D. Ga. 2002). Although the plaintiffs failed to identify this waiver of immunity afforded Title VII claims as a basis to waive immunity

The Eleventh Amendment, which protects states from suit in federal court, also provides immunity against suits brought against a state in state courts. *Alden v. Maine*, 527 US 706, 741-754(II)(B)(1) to (4) (119 SCt 2240, 144 LE2d 636) (1999). That immunity extends to departments and agencies of the State, but not to other State entities unless they are "an arm of the State." Id. at 756(III); *Ga. Ports Auth.*, 304 Ga. at 674(3). Thus, a county school district is only immune from federal claims if it constitutes an arm of the State. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 US 274, 280 (III) (97 SCt 568, 50 LE2d 471) (1977). See also *Lightfoot v. Henry County Sch. Dist.*, 771 F3d 764, 768-69(III)(A) (11th Cir. 2014) (setting out the factors relevant to determining whether the school board was an arm of the State).

Here, in addressing whether Eleventh Amendment immunity applied to the Title VII claims, the plaintiffs failed to plead any basis for a waiver of immunity in their complaints and did not raise the issue until their responses to the motions to dismiss. And, in those responses, they cited law applicable to official immunity, conflating the legal framework for claims alleging constitutional violations by state actors under 42 USC § 1983 with liability under Title VII. It was not until

in state court, Eleventh Amendment immunity only applies if the school district is an arm of the State. *Ga. Ports Auth.*, 304 Ga. at 668(1).

supplemental briefing that the plaintiffs even mentioned that Eleventh Amendment immunity would not protect the school district because it was not an arm of the State.

Critically, the trial court's order, which was drafted by the plaintiffs' attorney, contains several mistakes. In addition to citing federal law applicable to motions to dismiss and confusing constitutional claims with employment discrimination, it also ignores binding Georgia precedent, mis-quotes cases cited, and relies on at least one hallucinated case. We find it troubling that counsel submitted such an order to the trial court, and regrettable that the trial court failed to identify any of these errors. See *Payne v. State*, Case No. S26A0459, slip op. at 1-5(1)-(4), 2026 WL 1215905 (Ga. May 5, 2026) (sanctioning counsel who prepared order citing hallucinated cases, remanding to the trial court to issue a new order omitting such citations, and encouraging trial courts to engage in a careful review of materials submitted to it); *Slay v. Ross*, ___ Ga. App. ___ (927 SE2d 569, 571) (2026) ("[h]allucinated cases are typically a hallmark of the irresponsible use of regenerative artificial intelligence (A.I.) in legal drafting." (punctuation omitted)). Accordingly, we must, yet again, remind counsel, and lower courts, of their professional responsibilities and obligations in the use of artificial intelligence.

Moreover, the trial court's order contains no analysis of the Eleventh Amendment immunity issue nor factual findings as to any of the factors applicable to the question of whether the school district was an "arm of the State." The trial court's summary conclusion, coupled with the errors identified above, hampers our ability to reach the merits of the Eleventh Amendment arguments. As a result, we find it necessary to vacate the order denying the motion to dismiss the Title VII claims, and we remand the case for reconsideration under the proper standards and bona fide case law. See *Payne*, Case No. S26A0459, slip op. at 1-5(1)-(4) (remanding case for reconsideration without hallucinated cases).

(b) *Is there a waiver of the district's sovereign immunity for state law claims brought in state court?*

We next consider whether the plaintiffs established a waiver of sovereign immunity for the state law tort and breach of contract claims, concluding that they did not.

The Henry County School District is a political subdivision of the State and is entitled to sovereign immunity unless it has been waived. Ga. Const. of 1983, Art. IX,

Sec. II, Par. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law."). *See also Worth County School Dist. v. Tibbets*, 319 Ga. 103, 107(2) (902 SE2d 558) (2024); *Parr v. Cook County School Dist.*, 359 Ga. App. 823, 824(1) (860 SE2d 114) (2021); *Wellborn v. DeKalb County School Dist.*, 227 Ga. App. 377, 379-80(4) (489 SE2d 345) (1997); *Crisp County School System v. Brown*, 226 Ga. App. 800(1) (487 SE2d 512) (1997). Such immunity "can be waived only by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." *Wellborn*, 227 Ga. App. at 379(4) (citing Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e)). "[I]mplied waivers are not favored." *Augusta Jud. Circuit Off. of Pub. Def. v. Hodge-Peets*, 370 Ga. App. 819, 824(3) (899 SE2d 363) (2024). The plaintiffs bear the burden of showing a waiver of immunity. *Dep't of Pub. Safety*, 320 Ga. at 153(2); *Alred*, 362 Ga. App. at 466.

Here, the plaintiffs alleged intentional infliction of emotional distress and breach of fiduciary duty against the district and its employees in their official capacities. But they failed to plead any basis for a waiver of immunity in their complaints, or the extent of such waiver. See *Ramos v. Owens*, 366 Ga. App. 216, 218

(881 SE2d 464) (2022). And, although Douglas amended his complaint after the school district filed its motion to dismiss, he did not remedy this omission.

In response to the motion to dismiss, the plaintiffs asserted that immunity was waived due to the alleged malice of the school district and its various employees, and that the school district was not an arm of the State. But, neither argument establishes a waiver of the district's sovereign immunity from the state law claims. First, malice is a waiver to official — not sovereign — immunity. See *Atlanta Pub. Schools v. M. M.*, __ Ga. App. __ (1) (926 SE2d 859, 862-63(1) (2026) ("[S]overeign immunity and official immunity are not synonymous, but are separate, related doctrines." (quotation marks omitted)). Thus, malice would waive immunity only as to those claims against the employees in their individual capacities. Id. Second, school districts' sovereign immunity under the Georgia Constitution does not depend on whether they are "an arm of the State." See *Worth County School Dist.*, 319 Ga. at 107(2); *Parr*, 359 Ga. App. at 824(1); *Wellborn*, 227 Ga. App. at 379-80(4); *Crisp County School System*, 226 Ga. App. at 802(2).[3]

---

[3] To the extent that they now claim the Georgia Tort Claims Act provides a waiver of immunity, the Act expressly states that it does not apply to school districts. OCGA § 50–21–22(5); *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 295 (454 SE2d 149) (1995). See also *McConnell v. Dep't of Labor*, 345 Ga. App. 669, 675(1)(b)

11

Because the plaintiffs failed to meet their burden of establishing the waiver of sovereign immunity, the tort claims against the school district and the employees in their official capacities must be dismissed. *Dep't of Pub. Safety*, 320 Ga. at 153(2); *Alred*, 362 Ga. App. at 466.

As to the breach of contract claims against the district,

> one of the exceptions to the defense of sovereign immunity is for "any action ex contractu for the breach of any written contract … entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). To meet [the] burden of proving a waiver of sovereign immunity, [the plaintiffs were] required to show that the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract. And general provisions of contract law cannot be applied by the courts to create a waiver of sovereign immunity by means other than by written contract.

*Justice*, 320 Ga. at 153-54(2). See also OCGA § 50-21-1(a).

Here, none of the plaintiffs attached a copy of the contract to their complaint or established the existence of a valid contract and its terms within the framework of

---

(814 SE2d 790) (2018) (noting that breach of fiduciary duty is a tort claim). And, any argument that the school district waived immunity through the purchase of liability insurance is foreclosed by our decision in *Crisp County School System*, 226 Ga. App. at 801(1).

the complaint, nor did they amend the complaint to include it after the school district filed its motion to dismiss. *Boyd v. Neal*, 350 Ga. App. 274, 275-79(1) (828 SE2d 650) (2019) (no waiver of immunity where plaintiff did not establish existence of a contract in the original complaint or the amended complaint). Accord *Young v. Johnson*, 359 Ga. App. 769, 771 (860 SE2d 82) (2021) (affirming dismissal where plaintiff failed to explicitly plead a waiver of sovereign immunity in her complaint, did not amend the complaint to correct the omission, and she failed to raise the waiver issue in any of her filings in the trial court below or respond to the motion to dismiss). Compare *Justice*, 320 Ga. at 150(1) (complaint alleged there was a written contract that included all of the elements of a contract and the terms that allegedly were breached). See also OCGA § 20-2-211(a) (providing for written contracts for teachers). As a result, the plaintiffs failed to establish a waiver for their contract claims against the school district. The trial court therefore erred by denying the motions to dismiss the contract claims.

2. We now turn to whether the claims against the employees in their individual capacities would be barred by official immunity or, alternatively, whether the allegations failed to state a claim under OCGA § 9-11-12(b)(6) ("Rule 12(b)(6)").

13

(a) *Official immunity*

The only claims at issue with regard to official immunity are the state law claims for intentional infliction of emotional distress and breach of fiduciary duty.

"We review de novo a trial court's ruling on a motion to dismiss based on official immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is any evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity."[4] *Garren v. Bryant*, 377 Ga. App. 699, 699 (922 SE2d 902) (2025).

"The doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacities." *Schultz v. Lowe*, 364 Ga. App. 345, 348(2) (874 SE2d 842) (2022) (quotation marks omitted). See also Ga. Const. of 1983, Art. I, § II, Par. IX. Such immunity protects public employees from suit for "discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption." *Hall v. Acker*, 367 Ga. App. 411, 414(1) (885

---

[4] Where a defendant moves to dismiss on the grounds of official immunity, "a trial court is not confined to the allegations of the complaint but is authorized to hear the matter on affidavits presented by the respective parties, or to direct that the matter be heard wholly or partly on oral testimony or depositions." *State of Ga. v. Federal Def. Program*, 315 Ga. 319, 327(3) (882 SE2d 257) (2022) (citation modified). Here, the plaintiffs proffered no evidence apart from the allegations in the complaints.

SE2d 266) (2023) (quotation marks omitted). The acts complained of here are discretionary acts, which "call[s] for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Roper v. Greenway*, 294 Ga. 112, 115–16 (751 SE2d 351) (2013) (citation modified).

Here, in response to the motions to dismiss, the plaintiffs alleged that the employees acted with malice. Although the trial court applied the standard of review applicable in federal court instead of Georgia law, we need not remand on this basis because the federal standard applicable to a motion to dismiss is more stringent than the state standard. Compare *Ashcroft v. Iqbal*, 556 US 662, 679(IV)(A) (129 SCt 1937, 173 LE2d 868) (2009) (to survive a motion to dismiss under federal law, legal conclusions made in the complaint "must be supported by factual allegations" that "plausibly give rise to an entitlement to relief."), with *Dillingham v. Doctors Clinic, P.A.*, 236 Ga. 302, 303 (223 SE2d 625) (1976) (under Georgia law, complaint need only "give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details."). Thus, the allegation that the defendants acted with malice is sufficient to

overcome official immunity at this stage of the litigation under Georgia law. *Everson v. DeKalb County School Dist.*, 344 Ga. App. 665, 669(2) (811 SE2d 9) (2018).

(b) *Rule 12(b)(6)*

Having concluded that official immunity would not bar the plaintiffs' claims at this stage of the litigation, we next consider whether any of the plaintiffs' allegations are sufficient to state a claim under Rule 12(b)(6). We conclude that they are not.

> We apply a de novo standard of review to a trial court's grant of a motion to dismiss. A motion to dismiss for failure to state a claim should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Stewart v. Johnson*, 358 Ga. App. 813, 818(4) (856 SE2d 401) (2021) (citations omitted).

(i) *Plaintiff Grant*

In his complaint, Grant alleged that he suffered intentional infliction of emotional distress ("IIED") and breach of fiduciary duty. We conclude that the claims must be dismissed.

> Georgia has long recognized a cause of action for intentional infliction of emotional distress. However, the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

*Mayorga v. Benton*, 364 Ga. App. 665, 670(1) (875 SE2d 908) (2022). As we have explained, "conduct which occurs in the context of the victim's employment may produce a character of outrageousness that might otherwise not exist ... [because] the workplace presents a hierarchy of structured relationships which cannot easily be avoided and thereby provides a captive victim[.]" *Howerton v. Harbin Clinic*, 333 Ga. App. 191, 206(2)(a) (776 SE2d 288) (2015) (citation modified). And when we consider

whether conduct meets the standard for IIED, we consider the alleged actions collectively. Id. Nevertheless, "[a]ctionable conduct does not include insults, threats, indignities, annoyances, petty oppressions, or other vicissitudes of daily living but must go beyond all reasonable bounds of decency." *Ashman v. Marshall's of MA*, 244 Ga. App. 228, 229(1) (535 SE2d 265) (2000). Thus, we have imposed liability "only where the conduct has been so outrageous in character, and so extreme in degree, as ... to be regarded as atrocious, and utterly intolerable in a civilized community." *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323–24 (723 SE2d 721) (2012) (quotation marks omitted).

Here, even assuming the allegations in Grant's complaint are true, and viewing the alleged actions cumulatively, they do not rise to the requisite level of extreme or outrageous conduct to state a claim for IIED as a matter of law. *Mayorga*, 364 Ga. App. at 670(1). Grant complained that he was assigned a "coach" or mentor to shadow him, but white principals were not; other employees warned him that district employees were "trying to build a case against" him; he was "forced to relinquish command and control of the school" to district employees; and he was "placed on leave due to the stressors incurred at the hands of" district employees before he

18

ultimately resigned. But we have generally required more than a mere adverse employment decision to establish that the conduct was sufficiently extreme and outrageous to state a claim for IIED. *Bowers v. Estep*, 204 Ga. App. 615, 618(2) (420 SE2d 336) (1992) (plaintiff failed to establish IIED where plaintiff alleged that he was "maliciously" transferred to another position, and his supervisors threatened, humiliated, and intimidated him while asking about his emotional condition).[5] Compare *Howerton*, 333 Ga. App. at 206-07(2)(a) (plaintiff stated a claim for IIED where she alleged physician in the clinic where she worked made comments about her genitalia to other employees while she was being treated by them).

The conduct Grant alleges, although unpleasant and demeaning, is insufficient to survive a motion to dismiss because it is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Ghodrati*, 314 Ga.

---

[5] We have repeatedly found similar conduct insufficient to avoid summary judgment. *Southland Propane v. McWhorter*, 312 Ga. App. 812, 819(3) (720 SE2d 270) (2011) (accusations of forgery, followed by termination and removal from premises was insufficient to constitute IIED); *Abdul-Malik v. AirTran Airways*, 297 Ga. App. 852, 857(1) (678 SE2d 555) (2009) (comments in meeting calling plaintiff a terrorist and a liar were insufficient to establish IIED); *Kramer v. Kroger Co.*, 243 Ga. App. 883, 888(3)(c) (534 SE2d 446) (2000) ("defamatory or derogatory remarks regarding one's employment generally do not rise to the level of extreme and outrageous conduct." (citation modified));

App. at 323–24. At most, this conduct constitutes the type of annoyances and indignities that can occur in the workplace. *Ashman*, 244 Ga. App. at 229(1).

As to the breach of fiduciary duty, Grant contends that there is a fiduciary relationship between himself, the defendant employees, and the Human Resources officers based on the contract for employment. We disagree.

To establish a breach of fiduciary duty, Grant must show "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Ansley Marine Const., Inc. v. Swanberg*, 290 Ga. App. 388, 391(1) (660 SE2d 6) (2008) (citation modified).

> The employee-employer relationship is not one from which the law will necessarily imply fiduciary obligations; however, the facts of a particular case may establish the existence of a confidential relationship between an employer and an employee concerning a particular transaction, thereby placing upon the parties the fiduciary obligations associated with a principal-agent relationship.

*Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 607(1)(b) (503 SE2d 278) (1998). A fiduciary relationship stems from a confidential relationship between the parties. *McConnell*, 345 Ga. App. at 680(3). See also *Atlanta Mkt. Ctr. Mgmt.*, 269 Ga. at 606(1). And, under OCGA § 23-2-58,

20

[a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent.

See also *McConnell*, 345 Ga. App. at 680(3). And, to constitute a fiduciary relationship in an employer-employee context, the employee must be "vested with authority, real or ostensible, to create obligations on behalf of the employer." *Atlanta Mkt. Ctr. Mgmt.*, 269 Ga. at 606(1)(a).

Here, Grant has not alleged any particular facts, outside the contract for employment, that would create a confidential relationship and a fiduciary duty. See *Atlanta Mkt. Ctr. Mgmt.*, 269 Ga. at 607(1)(b). See also *Haley v. Children's Healthcare of Atlanta*, No. 1:25-cv-3855-ELR-LRS, slip op. at *6(D), 2026 WL 790900, at *6(D) (N. D. Ga. 2026) (dismissing breach of fiduciary duty claim where plaintiff failed to allege how the parties' relationship established a fiduciary duty).

Given the allegations in the complaint, Grant has failed to state a claim for IIED or a breach of fiduciary duty. Accordingly, the trial court erred by denying the motion

to dismiss Grant's complaint with regard to the allegations against the employees in their individual capacities.

b. *Plaintiff Douglas*

Douglas alleged that district employees questioned his decisions in front of other staff; ignored reports that he had been threatened by the spouse of a school employee; held his contract for a period of time before renewing it; demeaned his leadership; recruited staff to undermine his authority and harass him; and placed him on administrative leave without cause.

Douglas does not allege in his complaint that the employees' actions were outrageous and extreme. *Scouten v. Amerisave Mortg. Corp.*, 284 Ga. App. 242, 244(3) (643 SE2d 759) (2007), vacated in part on other grounds in 291 Ga. App. 493 (662 SE2d 741) (2008) (where plaintiff's complaint failed to allege or show that employer's actions were "extreme" or "outrageous," it was "defective as a matter of law" and properly dismissed) (quotation marks omitted).

Nor has Douglas sufficiently stated a claim for breach of fiduciary duty. See *Atlanta Mkt. Ctr. Mgmt.*, 269 Ga. at 606(1)(b); *Haley*, No. 1:25-cv-3855-ELR-LRS, slip

op. at *6(D), 2026WL790900, at *6(D). Accordingly, the trial court erred by denying the motion to dismiss these claims against the employees in their individual capacities.

c. *Plaintiff Forbes*

Forbes alleged that district employees demeaned her communication and leadership skills; harassed her; warned her that she would be removed after her third year; made negative comments about her in front of other staff; and demoted her.

As detailed above, these allegations fail to state a claim for either IIED, *Bower*, 204 Ga. App. at 618(2), or breach of fiduciary duty, *Atlanta Mkt. Ctr. Mgmt.*, 269 Ga. at 607(1)(b); *Haley*, No. 1:25-cv-3855-ELR-LRS, slip op. at *6(D), 2026 WL 790900, at *6(D). Accordingly, the trial court erred by denying the motion to dismiss Forbes's claims against the employees in their individual capacities.

For the foregoing reasons, the trial court's order denying the motions to dismiss is reversed in part as to the state law claims raised against all defendants. Those claims are either barred by sovereign immunity or failed to state a claim. As to the Title VII claims against the school district, we vacate the trial court's order, and remand the

case for reconsideration consistent with this opinion.

*Judgments reversed in part; vacated in part; and cases remanded with direction.*

*Barnes, P. J., and Hodges, J., concur.*